**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF**
**TEXAS HOUSTON DIVISION**

| | | |
|---|---|---|
| PARAGON HEALTHCARE GROUP LLC; | § | **CIVIL ACTION NO:**_____ |
| | § | |
| and | § | |
| | § | |
| BROOKSHIRE TX SNF MANAGEMENT, LLC DBA BROOKSHIRE RESIDENCE AND REHABILITATION CENTER | § § § § | |
| | § | |
| and | § | |
| | § | |
| BROOKSHIRE TX SNF REALTY, LLC | § | |
| | § | |
| and | § | |
| | § | |
| ROCKDALE TX SNF MANAGEMENT, LLC dba ROCKDALE RESIDENCE AND REHABILITATION CENTER | § § § § | |
| | § | |
| and | § | |
| | § | |
| ROCKDALE TX SNF REALTY, LLC | § | |
| | § | |
| and | § | |
| | § | |
| SHARPVIEW SNF MANAGEMENT LLC dba SHARPVIEW RESIDENCE AND REHABILITATION CENTER | § § § § | |
| | § | |
| and | § | |
| | § | |
| SHARPVIEW TX SNF REALTY LLC | § | |
| | § | |
| and | § | |
| | § | |
| VICTORIA TX SNF MANAGEMENT, LLC dba VICTORIA RESIDENCE AND REHABILITATION CENTER | § § § § | |
| | § | |
| and | § | |
| | § | |
| VICTORIA TX SNF REALTY, LLC | § | |
| | § | |

and                                              §
                                                 §
WEBSTER SNF MANAGEMENT, LLC DBA                  §
WEBSTER RESIDENCE AND                            §
REHABILITATION CENTER                            §
                                                 §
and                                              §
                                                 §
WEBSTER TX SNF REALTY LLC                        §
                                                 §
and                                              §
                                                 §
WEST HOUSTON SNF MANAGEMENT LLC                  §
dba ROYAL OAKS RESIDENCE AND                     §
REHABILITATION CENTER                            §
                                                 §
and                                              §
                                                 §
WEST HOUSTON TX SNF REALTY LLC                   §
                                                 §
and                                              §
                                                 §
WILLOWBROOK SNF MANAGEMENT,                      §
LLC DBA WILLOWBROOK RESIDENCE &                  §
REHABILITATION CENTER                            §
                                                 §
and                                              §
                                                 §
WILLOWBROOK TX SNF REALTY, LLC                   §
                                                 §
                        Plaintiffs,              §
                                                 §
vs.                                              §
                                                 §
AFFILIATED FM INSURANCE COMPANY                  §
                                                 §
                        Defendant.               §
                                                 §

## **PLAINTIFFS' ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

Paragon Healthcare Group, LLC; Brookshire TX SNF Management, LLC dba Brookshire

Residence and Rehabilitation Center; Brookshire TX SNF Realty, LLC; Rockdale TX SNF

Management LLC dba Rockdale Residence and Rehabilitation Center; Rockdale TX SNF

Realty, LLC; Sharpview SNF Management LLC dba Sharpview Residence and Rehabilitation Center; Sharpview TX SNF Realty LLC; Victoria TX SNF Management, LLC dba Victoria Residence and Rehabilitation Center; Victoria TX SNF Realty, LLC; Webster SNF Management, LLC dba Webster Residence and Rehabilitation Center; Webster TX SNR Realty LLC; West Houston SNF Management LLC dba Royal Oaks Residence and Rehabilitation Center; West Houston TX SNF Realty LLC; Willowbrook SNF Management, LLC dba Willowbrook Residence and Rehabilitation Center; and Willowbrook TX SNF Realty LLC (collectively, "Plaintiffs") file this Original Complaint against Defendant Affiliated FM Insurance Company, and would respectfully show the Court as follows:

## I.     PARTIES

1.      Plaintiff Paragon Healthcare Group LLC ("Paragon") is a Delaware limited liability company with a principal place of business located at 1981 Marcus Avenue, Suite C129, New Hyde Park, New York. Plaintiff Paragon provides consulting services to the owners and operators of over twenty (20) post-acute care facilities ("Post-Acute Care Facility" or "Post-Acute Care Facilities") located in fifteen (15) counties throughout the State of Texas.

2.      Plaintiff Brookshire TX SNF Management, LLC dba Brookshire Residence and Rehabilitation Center ("Brookshire Management") is a Texas limited liability company with a principal place of business located at 710 Hwy 359 S, Brookshire, Texas, where it operates a Post-Acute Care Facility ("Brookshire Rehab").

3.      Plaintiff Brookshire TX SNF Realty, LLC ("Brookshire Realty" and collectively with Brookshire Management and Brookshire Rehab, "Brookshire") is a Texas limited liability company with a registered agent for service of process, VCorp Services, LLC, located at 1999

Bryan St., Suite 900, Dallas, Texas.  Brookshire Realty is the owner of the real property located at 710 Hwy 359 S, Brookshire, Texas, where the operations of Brookshire Rehab are conducted.

4.      Plaintiff Rockdale TX SNF Management LLC dba Rockdale Residence and Rehabilitation Center ("Rockdale Management") is a Texas limited liability company with a principal place of business located at 222 South FM 487, Rockdale, Texas, where it operates a Post-Acute Care Facility ("Rockdale Rehab").

5.      Plaintiff Rockdale TX SNF Realty, LLC ("Rockdale Realty" and collectively with Rockdale Management and Rockdale Rehab, "Rockdale") is a Texas limited liability company with a registered agent for service of process, VCorp Services, LLC, located at 1999 Bryan St., Suite 900, Dallas, Texas.  Rockdale Realty is the owner of the real property located at 222 South FM 487, Rockdale, Texas, where the operations of Rockdale Rehab are conducted.

6.      Plaintiff Sharpview SNF Management LLC dba Sharpview Residence and Rehabilitation Center ("Sharpview Management") is a Texas limited liability company with a principal place of business located at 7505 Bellerive, Sharpview, Texas, where it operates a Post-Acute Care Facility ("Sharpview Rehab").

7.      Plaintiff Sharpview TX SNF Realty LLC ("Sharpview Realty" and collectively with Sharpview Management and Sharpview Rehab, "Sharpview") is a Texas limited liability company with a registered agent for service of process, VCorp Services, LLC, located at 1999 Bryan St., Suite 900, Dallas, Texas. Sharpview Realty is the owner of the real property located at 7505 Bellerive, Sharpview, Texas, where the operations of Sharpview Rehab are conducted.

8.      Plaintiff Victoria TX SNF Management, LLC dba Victoria Residence and Rehabilitation Center ("Victoria Management") is a Texas limited liability company with a

principal place of business located at 114 Medical Drive, Victoria, Texas, where it operates a Post-Acute Care Facility ("Victoria Rehab").

9.     Plaintiff Victoria TX SNF Realty, LLC ("Victoria Realty" and collectively with Victoria Management and Victoria Rehab, "Victoria") is a Texas limited liability company with a registered agent for service of process, VCorp Services, LLC, located at 1999 Bryan St., Suite 900, Dallas, Texas. Victoria Realty is the owner of the real property located at 114 Medical Drive, Victoria, Texas, where the operations of Victoria Rehab are conducted.

10.     Plaintiff Webster SNF Management, LLC dba Webster Residence and Rehabilitation Center ("Webster Management") is a Texas limited liability company with a principal place of business located at 750 North Texas Avenue, Webster, Texas, where it operates a Post-Acute Care Facility ("Webster Rehab").

11.     Plaintiff Webster TX SNR Realty LLC ("Webster Realty" and collectively with Webster Management and Webster Rehab, "Webster") is a Texas limited liability company with a registered agent for service of process, VCorp Services, LLC, located at 1999 Bryan St., Suite 900, Dallas, Texas. Webster Realty is the owner of the real property located at 750 North Texas Avenue, Webster, Texas, where the operations of Webster Rehab are conducted.

12.     Plaintiff West Houston SNF Management LLC dba Royal Oaks Residence and Rehabilitation Center ("West Houston Management") is a Texas limited liability company with a principal place of business located at 2939 Woodland Park Drive, Houston, Texas, where it operates a Post-Acute Care Facility ("Royal Oaks Rehab").

13.     Plaintiff West Houston TX SNF Realty LLC ("West Houston Realty" and collectively with West Houston Management and Royal Oaks Rehab, "Royal Oaks") is a Texas limited liability company with a registered agent for service of process, VCorp Services, LLC,

located at 1999 Bryan St., Suite 900, Dallas, Texas. West Houston Realty is the owner of the real property located at 2939 Woodland Park Drive, Houston, Texas, where the operations of Royal Oaks Rehab are conducted.

14.     Plaintiff Willowbrook SNF Management, LLC dba Willowbrook Residence and Rehabilitation Center ("Willowbrook Management") is a Texas limited liability company with a principal place of business located at 13631 Ardfield Drive, Houston, Texas, where it operates a Post-Acute Care Facility ("Willowbrook Rehab").

15.     Plaintiff Willowbrook TX SNF Realty LLC ("Willowbrook Realty" and collectively with Willowbrook Management and Willowbrook Rehab, "Willowbrook") is a Texas limited liability company with a registered agent for service of process, VCorp Services, LLC, located at 1999 Bryan St., Suite 900, Dallas, Texas. Willowbrook Realty is the owner of the real property located at 13631 Ardfield Drive, Houston, Texas, where the operations of Willowbrook Rehab are conducted.

16.     On information and belief, Defendant Affiliated FM Insurance Company ("AFMIC") is a fire and casualty insurance company that was formed under the laws of and has its principal place of business in Rhode Island. Upon information and belief, at all times referred to herein, AFMIC was licensed in Texas by the Texas Department of Insurance and engaged in the business of insurance in the State of Texas, where it specializes in providing commercial property insurance coverage for casualty losses including, but not limited to, property damage and business interruption losses caused by wind, water and flood associated with storms, hurricanes, tornadoes and other similar phenomenon. AFMIC may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140. Plaintiffs request that Summons be issued for AFMIC.

## II.     JURISDICTION

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(l) because Plaintiffs are citizens of the State of Delaware and Texas and Defendant AFMIC is a citizen of Rhode Island, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## III.     VENUE

18.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 139l(a)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District. All of the Post-Acute Care Facilities are located in the State of Texas, and many of the Post-Acute Care Facilities are located in this District. More particularly, this action concerns real property and businesses located and operated in Houston, Harris County, Texas. The insurance policy at issue on which Plaintiffs are identified as insureds was to be performed within this District, and losses under the policy that occurred in this District (including payments to be made to Plaintiffs under the policy) were required to be made within this District. Further, investigation, including communications to and from the parties and their representatives and site visits, occurred within this District.

## IV.     NOTICE AND CONDITIONS PRECEDENT

19.     Pursuant to Texas Insurance Code § 542A.003(D), pre-suit notice is impracticable and, therefore, not required, as Plaintiffs have a reasonable basis to believe that there is insufficient time to give pre-suit notice before the applicable limitations period will expire.

20.     All other conditions precedent necessary to maintain this action have been performed, have occurred, or have been waived by AFMIC, or AFMIC is otherwise estopped from raising any conditions due to its conduct.

## V.     FACTS

**The AFMIC Policy**

21.     AFMIC issued to Paragon ProVision insurance policy number EQ827, effective for the policy period from July 1, 2017 to July 18, 2018 (the "Policy"). Brookshire, Rockdale, Sharpview, Victoria, Webster, Royal Oaks, and Willowbrook are identified in the Declarations pages as Additional Named Insureds. A true, accurate, and correct copy of the Policy is attached hereto as Exhibit "A" and incorporated herein by reference.

22.     The Policy broadly covers certain described properties against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE." The properties owned by Brookshire Realty, Rockdale Realty, Sharpview Realty, Victoria Realty, Webster Realty, West Houston Realty, and Willowbrook Realty and where the respective operations of Brookshire Rehab, Rockdale Rehab, Sharpview Rehab, Victoria Rehab, Royal Oaks Rehab, and Willowbrood Rehab are conducted, are identified as covered properties in the Location Schedule of the Declarations pages to the Policy.

23.     Subject to certain sub-limits of liability, AFMIC's total limit of liability, including any insured Business Interruption loss, is the Policy Limit of $151,000,000 as a result of any one occurrence.

**The Loss**

24.     The Post-Acute Care Facilities owned or operated by Plaintiffs Brookshire Management, Brookshire Realty, Rockdale Management, Rockdale Realty, Sharpview Management, Sharpview Realty, Victoria Management, Victoria Realty, Webster Management, Webster Realty, West Houston Management, West Houston Realty, Willowbrook Management and Willowbrook Realty provide much needed temporary and permanent medical care and

related services such as skilled nursing, hospice, home health and rehabilitation services to the citizens of the State of Texas, in particular citizens who are elderly, impaired or otherwise unable to care for themselves.

25.     On or about August 25, 2017, Hurricane Harvey, recognized as one of the most devastating natural disasters in United States history, made landfall on the Texas coast near Corpus Christi as a Category 4 hurricane with 130 mile per hour winds. Hurricane Harvey made landfall three (3) times in six (6) days. At its peak, on September 1, 2017, one-third of Houston was underwater. Two (2) feet of rain fell in the first twenty-four (24) hours. Flooding forced 39,000 people from their homes to shelters. According to the National Hurricane Center, Hurricane Harvey caused $125 billion in damages which is more than all other natural disasters in U.S. history, except for Hurricane Katrina.

26.     Hurricane Harvey did not spare the properties or operations where Plaintiffs Brookshire, Rockdale, Sharpview, Victoria, Royal Oaks, and Willowbrook conducted business (collectively "Properties"). Each sustained substantial damages, including, to varying degrees, damages to roofs, HVAC, windows, walls, and flooring due to hurricane-force winds, water, water-intrusion, and flooding, which not only required significant clean-up, repair, and renovation of the buildings but also required adaptive changes to the buildings and properties to make them compliant with current code requirements.

27.     In addition, Plaintiffs Brookshire, Rockdale, Sharpview, Victoria, Royal Oaks, and Willowbrook also incurred substantial business income losses due to the interruption of the operations of the Post-Acute Care Facilities by Hurricane Harvey.

**Relevant Declarations/Policy Provisions**

28.     The coverages implicated by the wind, water and flood damages caused by Hurricane Harvey involve essentially two areas: physical damages to covered property and loss of business income.

*Physical Loss and Physical Damage*

29.     The Policy provides "All Risk Coverage" (*i.e.*, all risk of physical loss or damage) at twenty-two (22) properties in Texas, including:

| | | |
|---|---|---|
| 4.  710 Hwy 359 S, Brookshire, TX 77423, Index No. 002714.55 | | (Brookshire) |
| 7.  222 South Fm 487, Rockdale, TX 76567, Index No. 002714.61 | | (Rockdale) |
| 9.  114 Medical Drive, Victoria, TX 77904, Index No. 002714.71 | | (Victoria) |
| 19. 2939 Woodland Park Drive, Houston, TX 77082, Index No. 074312.08 | | (Royal Oaks) |
| 20. 13631 Ardfield Drive, Houston, TX 77070, Index No. 074312.09 | | (Willowbrook) |
| 21. 750 North Texas Avenue, Webster, TX 77598, Index No. 074460.02 | | (Webster) |
| 22. 7505 Bellerive Drive, Houston, TX 77036, Index No. 074387.64 | | (Sharpview) |

The property insured includes "real property in which the insured has an insurable interest" and "personal property owned by the insured consisting of improvements and betterments in which the insured has an insurable interest." Declarations, E. Insurance Provided; Policy, All Risks Coverage, A. Property Insured.

30.     The All Risk Coverage under the Policy includes, but is not limited to, coverage for damages caused by flood and wind; the costs associated with decontamination, debris removal, and to temporarily protect or preserve insured property; and the expenses incurred for the fees/costs of professionals such as auditors, accountants, architects, engineers and others.

31.     The All Risk Coverage under the Policy also includes, but is not limited to damages associated with demolition and the increased costs of construction "resulting from the Insured's obligation to comply with a law or ordinance, provided that: a) Such law or ordinance is enforced as a direct result of insured physical loss or damage at a **location**; b) Such law or

ordinance is in force at the time of such loss or damage; and c) Such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage." Declarations, F. Sub-Limits, Additional Coverages; Policy, D. Additional Coverages, 10. Demolition and Increased Cost of Construction.

32.     The Policy defines **location** as a "…location described in the Insurance Provided clause of the Declarations section or included as Newly Acquired Property or Unnamed Property coverages." As noted above, the Insurance Provided clause of the Declarations (E. Insurance Provided), describes, among other properties, the properties owned and operated by Plaintiffs.

*Business Interruption*

33.     The Policy also provides insurance coverage for Business Interruption Loss "as a direct result of physical loss or damage of the type insured: 1. To property as described elsewhere in this Policy and not otherwise excluded by this Policy; 2. Used by the Insured; 3. While at a **location** or while in transit as provided by this Policy; and 4. During the Period of Liability as described elsewhere in this Policy." Declarations, F. Sub-Limits, Business Interruption Coverage; Policy, Business Interruption, A. Loss Insured.

34.     Per the express terms of the Policy, there are two metrics for the calculation of Business Interruption Coverage: Gross Profits and Gross Earnings. Declarations, Part F. Sub-Limits, Business Interruption Coverage; Policy, B. Business Interruption Coverage, 1. Gross Earnings, 2. Gross Profits, 5. BI Select.

35.     There also is coverage under the Policy for Extra Expense "incurred by the Insured of the following during the Period of Liability to: a)  Temporarily continue as close to normal the conduct of the Insured's business; and b) Temporarily use the property or facilities of

the Insured or others." Declarations, F. Sub-Limits, Business Interruption Coverage; Policy, B. Business Interruption Coverage, 4. Extra Expense.

36.     Under the Policy, for Gross Earnings, Rental Income, or Extra Expense, the Period of Liability for Business Interruption Coverage and Business Interruption Coverage Extensions begins from the time of the insured loss or damage and ends when "[t]he lost or damaged property could be repaired or replaced and made ready for production or business operations or services under the same or equivalent physical operating conditions that existed prior to the loss or damage." Policy, Business Interruption, C. Period of Liability, 1 and 2(a).

37.     The Period of Liability for Gross Profit is "the period starting from the time of physical loss or damage of the type insured and ending no later than the period of time shown in the Declarations section during which the results of the business shall be directly affected by such damage." The Period of Liability for Gross Profit in the Declarations Section is twelve months.  Declarations, F. Sub-Limits, Business Interruptions Coverage.

**The Claims**

38.     As devastating as the physical damages and losses to the Properties were, Plaintiffs were comforted by the fact that they had protected themselves against these potential losses and a sure business disaster by securing the Policy.

39.     Immediately after Hurricane Harvey, Plaintiffs promptly filed claims with AFMIC, alerting it to the covered damages to the Properties and associated business interruption losses.

40.     AFMIC accepted the claims, assigned claim numbers, began making some payments, and otherwise engaged in the adjustment process.

41.     Approximately two months into the process, Plaintiffs notified AFMIC that an environmental contractor/consultant had advised Plaintiffs that the entire 1300 block of rooms at Royal Oaks Rehab were suspected of having mold that required removal of substantial amounts of sheetrock to evaluate the condition.

42.     Shortly thereafter, Plaintiffs advised AFMIC that there was no way to separate mold that pre-existed Hurricane Harvey from the mold resulting from the hurricane and that the condition required remediation. This placed AFMIC on notice, early in the adjustment process, that the damages and remediation/mitigation were well beyond what originally had been anticipated.

43.     Approximately thirty (30) days later, in December 2017, Plaintiffs met with AFMIC to address Industrial Hygiene Protocols, the scope of repairs, time and material estimates, the use of a Clerk of Works and discussions regarding building and other code compliance ("Law & Ordinance" or "L&O").

44.     In this time period, Plaintiffs had similar discussion with AFMIC relating to the scope of repairs for remediation/renovation at other Properties also requiring L&O compliance.

45.     The L&O discussions put AFMIC on notice of an important issue regarding the remediation/renovation of the physical damage and losses to the Properties: a critical first step in the restoration of the Properties would require adaptive changes to bring the Properties into present code compliance, which had not been previously required by law because the construction of the Properties pre-dated the changes to the applicable codes that were in effect at the time of Hurricane Harvey. As noted above, the Policy includes L&O coverage.

46.     Plaintiffs followed up the December 2017 meeting in mid-January 2018 with AFMIC and provided a proposed contract for Architectural Services that included a plan to

identify the bulk of the code work prior to commencement of the remediation and renovation work.  Plaintiffs also recommended that AFMIC and Plaintiffs agree on a methodology.

47.     Subsequently, Plaintiffs provided AFMIC with estimated damages, including the Architectural and Engineering Fees ("A&E Fees").

48.     In April 2018, AFMIC notified Plaintiffs that AFMIC would not consider any costs associated with A&E Fees nor costs associated with any L&O issues, and that AFMIC considered its existing budgets reasonable to cover the total Direct Damage repair expenses.

49.     A few weeks later, AFMIC apparently changed course and hired an L&O consultant to investigate, analyze, and likely minimize the impact of the L&O issues. Seven (7) more months passed with no determination by AFMIC on the L&O issues.

50.     Finally, on December 28, 2018—over a year after Plaintiffs first brought the need to address the L&O issues and their importance to the staging of the remediation and renovation work in order to restore the Properties to AMFIC's attention—AMFIC informed Plaintiffs in a meeting (the "December 28, 2018 Meeting") that Plaintiffs had been correct from the beginning for the need for an Architect and remediation specialist. AMFIC further advised that it would employ a new consultant to review the architectural drawings for accuracy and presented the minimum amount of work to perform restoration.

51.     Plaintiffs reiterated to AFMIC at the December 28, 2018 Meeting, as Plaintiffs had previously throughout the adjustment process, that Plaintiffs intended and continue to intend to restore the Post-Acute Care Facilities. To that end, Plaintiffs had agreed with AFMIC at various stages on Time & Material rates for the contractors and on contract terms for the architects.

52.     During the December 28, 2018 Meeting, Plaintiffs and AFMIC agreed that a contractor Hexagon would serve as "Clerk of the Works" and monitor the work being performed by the various vendors to ensure that the work being performed and billed was consistent with what was being observed. This would ultimately be used to determine the full cost of the restoration, including the L&O work.

53.     Subsequently, the remediation work began and Hexagon began clerking the work as agreed. Reports from the field indicated that the process was working smoothly.

54.     On October 10, 2019, however, Plaintiffs inquired about payment for outstanding invoices that were overdue and unpaid. During that phone call, AFMIC again changed course, informing Plaintiffs that AFMIC was "done with the claim."  This arbitrary and highly prejudicial action by AFMIC was as perplexing as it was shocking under the circumstances.

55.     In an effort to mitigate the harm caused by AFMIC's arbitrary and wrongful decision, Plaintiffs reiterated a prior request to extend the period to file Replacement Cost and Increased Cost of Construction claims as well as an extension of the lawsuit filing period. AFMIC denied these reasonable extension requests.

56.     Plaintiffs' claims for damages and losses under the Policy for property damages, related losses and for business interruption losses exceed $73,000,000.

## VI.  CAUSES OF ACTION

### Count One - Breach of Contract

57.     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.     The Policy is a valid, binding, and enforceable contract between Plaintiffs and AFMIC.

59.     AFMIC breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas law in relation to the Properties.

60.     AFMIC's breach proximately caused injuries and damages to Plaintiffs.

61.     All conditions precedent required under the Policy regarding the Properties have been performed, excused, waived and/or otherwise satisfied by Plaintiff; or, in the alternative, AFMIC is estopped from raising any conditions due to its breach of the contract.

**Count Two – Violations of Texas Insurance Code, Unfair Settlement Practices**

62.     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

63.     The conduct, acts, and/or omissions of AFMIC constitutes a violation of TEX. INS. CODE § 541.060(a). All violations under this article are actionable pursuant to TEX. INS. CODE. § 541.151(1).

64.     AFMIC's unfair settlement practices consist of the following:

a) misrepresenting to Plaintiffs material facts or Policy provisions relating to the coverage at issue for the Properties (TEX. INS. CODE § 541.060(a)(1));

b) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims regarding the Properties, even though AFMIC's liability for covered damages to the Properties under the Policy was reasonably clear (TEX. INS. CODE § 541.060(a)(2)(A));

c) failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law for AFMIC's denial of the claims regarding the Properties or offer of a compromise

settlement of the claims regarding the Properties (TEX. INS. CODE § 541.060(a)(3));

d) failing within a reasonable time to affirm or deny coverage of the claims regarding the Properties to Plaintiffs or to submit a reservation of rights to Plaintiffs (TEX. INS. CODE § 541.060(a)(4)(A)-(B)); and/or

e) refusing to pay Plaintiffs' claims regarding the Properties without conducting a reasonable investigation with respect to said claims (TEX. INS. CODE § 541.060(a)(7)).

65.     AFMIC also violated TEX. INS. CODE § 541.061 by engaging in unfair settlement practices regarding the Properties by:

a) misrepresenting the insurance policy under which it affords property coverage to Plaintiffs, by making an untrue statement of material fact (TEX. INS. CODE § 541.061(1));

b) misrepresenting the insurance policy under which it affords property coverage to Plaintiffs, by failing to state a material fact that is necessary to make other statements made not misleading (TEX. INS. CODE § 541.061(2)); and/or

c) misrepresenting the insurance policy under which it affords property coverage to Plaintiffs, by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code §§ 541.061 and 541.002.

66.     AFMIC knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of TEX. INS.

CODE § 541.002(1). Because each of the acts above, together and singularly, was done "knowingly" and was a producing cause of Plaintiffs' damages, Plaintiffs are entitled to treble damages pursuant to Tex. Ins. Code § 541.152.

### Count Three - Violations of Texas Insurance Code, Prompt Payment of Claims

67.     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

68.     The claims related to the Properties are claims under an insurance policy with AFMIC of which Plaintiffs' gave AFMIC proper notice.  AFMIC is liable for the claims related to the Properties. AFMIC violated the Prompt Payment of Claims provisions found in TEX. INS. CODE § 542.051, *et seq*. by:

    a)  Failing to acknowledge receipt of the claims for the Properties, to commence investigation of the claims, and/or to request from Plaintiffs all items, statements, and forms that AFMIC reasonably believed would be required within the time constraints provided by TEX. INS. CODE § 542.055;

    b)  Failing to notify Plaintiffs' in writing of its acceptance or rejection of the claims related to the Properties within the applicable time constraints provided by TEX. INS. CODE § 542.056; and/or by delaying payment of the claims related to the Properties following AFMIC's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058.

69.     AFMIC's violations of the Prompt Payment of Claims provisions of the Texas Insurance Code are actionable pursuant to TEX. INS. CODE § 542.060.

70.     As a result of AFMIC's violations of the Prompt Payment of Claims provisions, Plaintiffs are entitled to their damages, plus penalty interest at the rate of eighteen percent (18%) per annum and attorneys' fees incurred in pursuing Plaintiffs' claims.

**Count Four: Breach of Duty of Good Faith and Fair Dealing**

71.     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

72.     AFMIC, as the property insurer, had a non-delegable duty to deal fairly and in good faith with Plaintiffs in the processing of Plaintiffs' claims. AFMIC breached this duty of good faith and fair dealing by refusing to properly investigate the claims and denying or delaying the payment of insurance benefits when AFMIC knew or should have known that there was no reasonable basis for denying or delaying payment of the required benefits.

73.     As a proximate result of AFMIC's breach of these legal duties, Plaintiffs have suffered damages.

**Count Five: Estoppel**

74.     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

75.     AFMIC's actions and inactions prevented completion of the buildings in the two-year time period in the Policy for Replacement Cost and Increased Cost of Construction claims.

76.     AFMIC's actions and inaction lulled Plaintiffs into the belief that completion of the buildings in the time period outlined in the Policy for Replacement Cost and Increased Cost of Construction claims would not be required in order to recover for Replacement Cost and Increased Cost of Construction claims.

77.     As a result of AFMIC's actions, Plaintiffs sought a reasonable extension of time to recover under the Policy for Replacement Cost and Increased Cost of Construction claims, but AFMIC denied the request.

78.     AFMIC is estopped from asserting Plaintiffs may not recover for Replacement Cost and Increased Cost of Construction claims based on the failure to complete the renovations of the Properties within two years.

**Count Six: Punitive/Exemplary Damages for Bad Faith**

79.     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

80.     AFMIC acted fraudulently and with malice (as that term is legally defined) in denying and delaying Plaintiffs' claims for benefits.

81.     Further, AFMIC had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

82.     As a result, Plaintiffs are entitled to punitive/exemplary damages from AFMIC.

## VII.    DAMAGES

83.     As a result of AFMIC's acts and/or omissions, Plaintiffs have sustained damages in excess of the minimum jurisdictional limits of this Court.

84.     In particular, Plaintiffs are entitled to the actual damages resulting from AFMIC's breach of contract, breach of common law duties, and violations of law.  The damages associated with AFMIC's conduct include the consequential loss to Plaintiffs' economic welfare from the wrongful denial and delay of benefits including loss of the property and business; and the other actual damages permitted by law. In addition, Plaintiffs are entitled to trebled damages, statutory interest, and punitive/exemplary damages as allowed by law.

85.     Plaintiffs engaged the undersigned counsel to prosecute this lawsuit against AFMIC and agreed to pay reasonable and necessary attorneys' fees and expenses through trial and any appeal.

86.     Plaintiffs seek an award of all reasonable and necessary attorneys' fees incurred in prosecuting their causes of action through trail and any appeal under §38.001(8) of the Texas Civil Practice and Remedies Code. Additionally, and/or in the alternative, Plaintiffs request an award of attorneys' fees as permitted under the Texas Insurance Code.

87.     Plaintiffs are further entitled under the law to the recovery of pre- and post-judgment interest at the maximum legal rate. Further, Plaintiffs are entitled to costs of court as allowed by law.

## VIII.   JURY DEMAND

88.     Plaintiffs respectfully request a trial by jury on all issues to which Plaintiffs are so entitled.

## IX.    PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that, upon trial hereof, Plaintiffs recover such sums as would reasonably and justly compensate Plaintiffs in accordance with the rules of law and procedure, as to actual, consequential, punitive/exemplary, statutory, and treble damages as may be found. Additionally, Plaintiffs pray for an award of attorneys' fees for the trial and any appeal of this case, for all costs of Court expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or at equity, to which Plaintiffs may be entitled.

Respectfully submitted,

WEYCER, KAPLAN, PULASKI &  ZUBER, P.C.

BY:  */s/ ANDREW M. CAPLAN*
   ANDREW M. CAPLAN
   State Bar No. 0376700
   Federal Bar No. 7810
   11 Greenway Plaza, Suite 1400
   Houston, Texas 77046
   Tel:  (713) 341-1140
   Fax: (713) 961-5341
   acaplan@wkpz.com

   ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL::

JASON JOHNS
State Bar No. 24041191
Federal Bar No. 37221
11 Greenway Plaza, Suite 1400
Houston, Texas 77046
Tel:  (713) 341-1140
Fax: (713) 961-5341
jjohns@wkpz.com